The only other case being argued today is Paul Parker v. Burlington Northern Santa Fe Railway Company, BNSF. And for the appellant, we have Mr. Cramer. And for the appellee, Mr. Morrell. So we'll hear from Mr. Cramer first. Good morning, Your Honors. I'd like to reserve around three minutes for rebuttal, and I'll watch the time on that. May it please the Court, my name is Kyle Cramer, here on behalf of Appellant Paul Parker, the personal representative of the estate of Curtis Rookard, who was the railroad employee in this case. I want to highlight three main arguments today. First, the errors in law made by the district court in its conclusions of law and judgment in this case, which are reviewed de novo, and that there was insufficient evidence to meet BNSF's high, clear, and convincing argument. Lastly, I'd like to briefly touch on the procedural errors made by the district court, which prejudiced Parker's drawing of his case. For the first issue, the district court stated that it relied on three conclusions to support its affirmative defense judgment, that BNSF believed Rookard violated rules, Parker's contributing factor case was weak, and that BNSF retaliated against other employees for conducting the same protected activity. Counsel, I'm going to sort of cut to the chase of what concerns me about your position in this case. There was a several-day trial, and the district court, you know, observed witnesses and took testimony, all the usual things, and made a number of findings of fact, including that the railroad fired him in accordance with its policies, that he had engaged in gross dishonesty and insubordination, which were per se fireable offenses under the policy. And I have a hard time seeing that those findings are clearly erroneous. Your Honor, I have a few different answers to that because I feel like there's a few different things mentioned there. One, I think this is somewhat of a unique case where it had a first trial and it was remanded for a second trial. The primary plaintiff was deceased before the trial, and also it was a different judge from the first trial than on the second trial. Why does any of that matter to the standard of review for clear error? On the standard of review, I think it doesn't quite matter. I think with the standard of review, you do have to keep in mind that it is a clear and convincing evidence burden. But I just... What railroad would not fire somebody for insubordination and for gross dishonesty of falsifying timesheets and getting in a fight with a coworker? I mean, it's hard to imagine anybody who wouldn't fire their employee for those things, regardless of what protected class they're in or what else they've done. Yes, Your Honor. I think this railroad wouldn't do that. I think there were plenty of comparative employees submitted in front of this court that demonstrated even with a single employee with no prior discipline on his record, who the railroad had determined was dishonest, had failed to comply with instructions, and I think there was another rule violation in there for this employee and multiple others. It sounds like a jury argument to me. I mean, there was no jury, but the possibility that there could have been a different outcome, the different outcome might also not be clearly erroneous, but that's not our job. That's the district court's job. I understand that, Your Honor, but I think there is plenty of case law, including from this district court, that has determined and held that there are specific considerations that don't constitute clear and convincing evidence under this burden. Just to follow up on Judge Graber's comments there, I thought that the argument that you were making was more of a legal argument. It is. That is not so much challenging the facts, but that the district court did not do the analysis correctly. I believe that is our primary argument. That's how we start out the brief. So in other words, as I understand the situation in this case, is there really is no — I mean, the district court specifically found that the protected activity, the failure or — It was a refusal. The refusal to stop the implicit request. Yes. To conduct the error test. That was a factor. Yes. I understand. So then the affirmative defense comes along. They assert the affirmative defense. Well, we would have done it anyways, but I thought the argument was, as I understand the case law, is that you have to look at the counter narrative. In other words, what would have happened had not that factor — Yeah, exactly. If you take that out of the equation, what would have happened? And while certainly insubordination and inappropriate misstating the timesheet can be — apparently are bases to fire somebody, the question is, would they have fired him here? And the district court really doesn't do that counter narrative as the analytical framework that the board seems to have adopted and that we seem to have recognized as well. What do you make, then, of paragraph 23, which states that the court concludes by clear and convincing evidence that absent the error test, the railroad would still have fired Mr. Rueckert? It seems to me that the court did exactly what you're saying they should do. First said there's a prima facie case, this error test was a contributing factor, and any inefficiency is also considered a contributing factor. Now I'm going to look at whether he would have been fired anyway. What's wrong with that legally? Your Honor, there's multiple things wrong with it. One, in the district court's order on the motion to amend or alter its judgment, it very explicitly laid out its support for the affirmative defense. And it consistently says the railroad believed, the railroad believed that he was dishonest, the railroad believed. And I believe that this court and other courts have held that a railroad's belief alone and getting to Judge Pius's question to me is, I believe that when you look at those considerations, that by itself isn't more. Except the actual findings don't rely on belief in the way that you're talking about. At least I did not read them that way. They're typical findings. Why was this person fired is a factual question. And it seems to me that the trier of fact answered it by saying he was fired in accordance with the policy, he was fired for insubordination, and he was fired for gross dishonesty. Those are, you know, statements that don't have to do specifically with belief. And I don't understand how the denial of a new trial, the sort of explanation takes away from the validity of the original findings of fact and conclusions of law. So, wait a minute. I think Judge Graber has, her point is well taken. And paragraph 23 is a problem for you. But as I understood from reading those board cases, that you have to ask the question about, you have to put aside the factor, the error test having that been a factor in the analysis. And you have to ask, well, if he had complied, in other words, had he stopped the error test, would any of this have happened? And I think there's two, I mean, approaches to it. And it does dive into the fact some. But he ended up getting called back specifically because his crew was working inefficiently. And that kind of led to everything. And then there's a discrepancy of whether he's told to tie up or go home right away. But what he did was he tied up and then he sat in the lunchroom and had a lunch. He was ordered to leave three times and he left the third time, right? That's how I read it. There was discrepancy about that occurring. And I don't want to sit and kind of challenge exactly what happened there. But to the point, the question is, has the railroad disciplined somebody for that same conduct? They can say it was a failure to comply with instructions or they can say it was insubordination. However, he went and had a lunch. How often does an employee, after they're told to tie up, go to the lunchroom and have a lunch? Is this really that big of an issue that the railroad consistently and routinely terminates somebody's employment for that sort of conduct? I'm also going to ask you about paragraph 32, which when it goes through all, after going through all the reasons why the district court thought that he would have been fired anyway, does state this, that, you know, this fact demonstrates that absent the error test, the railroad would have fired him anyway because of his gross dishonesty and insubordination. Again, that seems to be the test you're asking to have applied. If you didn't have that at all, would he have still been fired? That seems like the right test. I think when, again, I think the comparison, this law is comparing it to like a McDonnell and Douglas analysis where once the railroad names a rule violation, it's the employee's burden to come back and prove that it wasn't a pretextual decision. But in an FRSA burden-shifting analysis like this, the presumption must remain that these other decisions were pretextual in nature. But that doesn't mean the employer never wins, does it? And it doesn't mean that these kinds of factual findings are per se invalid. No, absolutely not. I mean, I believe that the FRSA does create a shield if an employee were to go and do other improper conduct, but that shield, like it could be pierced potentially, but it is the railroad's burden to demonstrate through clear and convincing evidence that it would have done this in action. And the finder of fact said exactly that. So it seems to me that although you're catching it as a legal argument, your real quarrel is with the factual findings. Well, and it comes back to what I think is the consistent case law on it from this circuit, other circuits, and the administrative courts, which really, really dives into that consistent application of rules and policies. I think, you know, you could presume that a railroad might take that action, but, I mean, how do you know? And I don't think it's appropriate to make a clear and convincing, a very high-burden evidence just based on a presumption that the railroad would take that action. Counsel, if I may ask you a question. Yes, Your Honor. It's a factual question. Could you explain to me what role the air brakes test has with regard to considerations of safety for the public? An air brake test, every car on a train, from my understanding, has a brake on it, and there's multiple types of air brake tests. So my understanding is the test applied here is to walk the train and assure that the brake on every single one of them is working. And, I mean, this is just kind of going off my own knowledge. I mean, a train is very difficult to stop. I believe the facts in the record determine that this train is going to be going over public crossings. I don't think the cars had residue, like chemical residues in them, issues like that. So I believe assuring that the train can stop is very important to the public. Does that answer your question, Your Honor? Yes. I'm getting close to the two-minute time here, so I think with the procedural errors I'll just leave those to the briefing. But I really want to highlight that I think at the end of the day it could be considered a factual question. However, many courts are very consistent on looking at the conclusive demonstration that the thing to be proved is reasonably certain. Courts really dive down into things where, like, a person's disciplined for a safety violation, but looking at it, that safety violation was not taking short, deliberate steps, and it was determined that that specific conduct, even though violating a safety rule is very important, and the railroad rightfully so should consider safety rule violations important, it's the conduct at issue that really mattered. And I'd like to preserve the rest of my time unless there's any additional questions. Hearing no questions, your time, remaining time, is preserved for rebuttal. Thank you. We'll give you a little extra time, so we'll set rebuttal at two minutes. Okay. Good morning, Your Honors. May it please the Court, my name is David Morrell on behalf of BNSF Railway Company. After a four-day bench trial, the district court found that BNSF would have dismissed Mr. Rueckert regardless of his protected activity due to findings of misconduct that included gross dishonesty and insubordination. The district court considered all the evidence, made a series of factual findings informed by credibility assessments, and concluded that under all the facts and circumstances, BNSF proved its affirmative defense under the FRSA. This court should affirm that decision because the district court did indeed apply the correct legal standard, and its findings are not clearly erroneous but supported by extensive record evidence. In fact, the panel in the prior appeal of this case had found that the evidence there was sufficient to create a jury question as to whether or not the error test played any role at all in BNSF's dismissal decision. It seems at least suggestive in light of that holding from the prior panel that even if there was a contributing factor finding in this case, that it's reasonable to conclude that, or at least that a reasonable fact finder could find that the error test was not determinative in the ultimate decision to dismiss Mr. Rueckert. Did the district court pay any attention to it in its decision here? What's that? The error test. So the district court did find that it played a minor role. Yes, it found that Mr. Rueckert had proved his affirmative case that it was a contributing factor, but then it pivoted in the context of the affirmative defense to assess. It should have been more specific. In its affirmative, in analyzing the affirmative defense, didn't the district court also refer to the error test? It was just a routine test. It was minor, and it only lasted 20 to 40 minutes or whatever it was. Correct. It seemed to downplay the significance of the error test. Correct, Your Honor. So the burden is lower on the employee under the FRSA to improving the contributing factors by preponderance of the evidence. Right, but I'm talking about the defense. Right, and so the Dugan case, which Judge Graber authored, is a really important case. We cite it in our brief, Dugan v. DoD, and it identified regarding identical burden-shifting framework under a different statute, but the substantive standard is the same. It identified the three factors that this court has directed fact-finders to consider, and one of them is the strength and existence of a motive to retaliate against the protected activity. And so what that suggests, or not just suggests but states, is that it is absolutely an appropriate consideration to evaluate the role that the protected activity played in the employer's dismissal decision. I would expect that, in fact, opposing counsel's brief claims in opposing the affirmative defense that the error test was the primary motivating factor, which itself is a nod to the fact that the role or the significance of the protected activity in the dismissal decision is relevant to the affirmative defense. It's an appropriate consideration. And in this case, the district court, sitting as the trier of fact or the finder of fact, found that it really did not play a significant role at all. That's not to suggest that somehow the burden that plaintiff carried on a contributing factor was distorted. Let me ask you this. Mr. Rochard's two, I don't know, colleagues or coworkers who were also called back to the depot, they were disciplined, but they weren't fired, right? Correct. What's the difference between the three, just that he engaged in this activity? Right. So Mr. Jones was the decision maker who selected and made the decision for discipline for each of the three employees. And he testified to this fact. He said, if you kept everything constant except you took out the error test, Mr. Rochard would still have been dismissed because of the insubordination and the gross dishonesty. There were no findings either at the on-property BNSF investigation or by the district court that the two crew members had engaged in those forms of misconduct, the gross dishonesty and the insubordination. And that was the decisive factor. So let me ask you this. There was very little evidence from BNSF of comparator situations, right? Your Honor, the district court did not expressly rely or talk about comparators, but there was comparator evidence. Exhibit 637, I believe, BNSF submitted comparator evidence. And not just that, it accompanied the submission of those exhibits or materials with live testimony. So Mr. Ringstead presented testimony, and they walked through the comparator evidence. And opposing counsel, Mr. Jungbauer, the Plaintiff's Trial Counsel, conducted extensive cross-examination of that live testimony to really pressure test those comparators that BNSF had offered. So it's not correct to state. It's pretty clear from the policies that the dishonesty and the insubordination would be grounds for dismissal. It seems to be pretty clear, but just taking it in this particular situation, given everything that would have happened, the problem when I read this, it was like the evidence just doesn't really seem to show that they would have, had it not been for that safety test, that error test, that they would have fired him for not going home when he was told to go home and for the misstatement on his time card. Your Honor, I respectfully disagree. Doug Jones, again, the decision-maker, testified at the trial, the second trial that was held here. He gave direct testimony, was cross-examined, and he testified if you held everything constant and changed the one variable of the error test, he would have reached the same decision, and that even the crux, he said, of the inefficiency charge was the general overall delay. But all of that aside, it really is the district court sitting as the fact-finder, its role to make exactly those kinds of determinations, whether Mr. Jones was credible. And the district court must have found that testimony credible about what he would have done. A lot of cases you're left with circumstantial evidence, and that's what the Dugan factors tend to focus on is the circumstantial evidence that bears on what the counterfactual world in which what would have happened if you changed the protected activity or took it out. And here you have direct testimony. You have direct evidence as to what they would have done. It struck me as, you know, BNSF is a very large company. It must have thousands of employees, right? That's right. Hundreds of employees who do the same sort of work as these fellows. I would assume so, yes. It's big. But yet they didn't seem to produce any evidence that said that in this kind of situation, their practice is to fire people who engage in misreporting their time. Your Honor, again, Exhibit 637 didn't even have an insubordination charge. It was just the tie-up document misconduct that there was sufficient for dismissal, and there was no allegation that they had engaged in protected activity. And so you do, and those individuals were from the same craft, were from the same division, which is relevant to whether they're similarly situated. And here you have comparators that, again, lack that sort of aggravating additional form of misconduct in the form of insubordination. And I'll also touch briefly because opposing counsel raised their comparator evidence. Again, the district court did not get into this, but what's interesting is there was direct testimony about those comparators. There was 12 that they claim are comparators. But all of them had signed what's called a waiver. They essentially just waived the investigation. It's essentially a guilty plea. And there's testimony that that results in mitigating, often can result in leniency. And there was also some testimony in the record to suggest that BNSF or some of the comparators might not have even proven the misconduct, which would explain why there was no discipline. Were there any comparators introduced on either side, and I am not aware of any, but I just want to be sure, that had the same constellation of problems, lying on the timesheet, not signing the timesheet, and starting an altercation with another employee? Your Honor, I don't believe so. The BNSF comparators involved the document-related charge of the incorrect time, but didn't have the insubordination, which, again, it's sort of off-fortiori. If BNSF was willing to dismiss individuals for one charge, you add insubordination. It almost is, you know, again follows from that, that BNSF would be more likely to follow through in a dismissal decision. But I also want to be clear that comparator evidence is not essential to prevail on an employer's affirmative defense. First of all, Dugan explicitly found that the agency there had proven its affirmative defense and that the comparator evidence factor had not played any role in the court's decision. In addition, that also makes a lot of sense just in terms of the risk of immunizing employees who engage in a whole constellation, as you put it, of misconduct. You would essentially have a scenario where, or novel misconduct, that the company had never faced before that's egregious would somehow become immunized just because there was no comparable set of facts before. And so there is not a specific comparator that had all of the offenses here, but you had a lesser set of offenses that still resulted in dismissal. But again, the district court did not rely on that, and that was appropriate given the other evidence before it. Although, of course, this court can affirm on any basis supported in the record, and that is in the record along with the trial testimony. Counsel, I have a question for you. So Mr. Brickard didn't leave as instructed with the other members of his crew? Did they work on doing the air brake test? So you're asking as a factual matter, did the two other members who were not dismissed? Not dismissed, but were disciplined in some way. Yes, so I believe they received what's called a 30-day record suspension, which is essentially a notation on one's record, but I don't believe there's any missed time. Were they following instructions of Brickard? I'm not sure that there's testimony on that. There may be. As I stand here, I'm not certain whether they were following his instructions or if they all just concurred collectively that an air test was necessary. Of course, that was a factual dispute in the prior case. In this case, whether or not it was necessary, the district court ultimately found as a matter of law that it wasn't necessary. But I don't, I'm not sure. If it's helpful, the court found in paragraph 7 that the crew members, plural, decided to perform an air test. Okay. Thank you, Your Honor. Yes, so it sounds like there was a finding of fact that. And then paragraph 10 is that Mr. Rooker conducted air tests several times weeks before without reprisal. Correct, Your Honor, and that's another salient fact as well in the court's finding. Again, it goes to the role that protected activity played and whether the company had a motive to retaliate, which, again, matches up exactly with the second Dugan factor. And when an employee has personally conducted, engaged in the same type of protected activity leading up to the events in question, it implies that it's the misconduct of gross dishonesty and subordination that, to borrow the language from the Apple case, really set the incident apart, that it wasn't the protected activity that was really driving the decision here, but the misconduct that followed in its wake. Was there any evidence that Rooker had a disciplinary record? Your Honor, I don't recall. I don't believe that he did, but I'm not sure. Your Honor, at bottom, I think Judge Graber hit the nail on the head. There were findings of fact made by the fact finder after a four-day trial. Even though plaintiff sort of broadly claims that they're challenging the factual findings, they don't actually identify any particular finding that fed into the ultimate question that they really disagree with and claim lacks any support in the record. And so what you have here is a set of facts that the decision maker reached or found and all of those fit comfortably within this court's precedence, the precedence of other circuits, as well as the board decision. Unless the court has any further questions, I'd ask that you affirm the decision below. Okay. Any questions of Judge Graber? Hearing no questions, we thank you for your argument. Thank you. Thank you. Now we'll hear from Appellant. We've extended your rebuttal time to two minutes, but please try to stay within that. Yes, Your Honor. I want to just discuss a couple issues. Appellee brought up the Dugan case. I think some of the issues in that and the things discussed by the court are instructive here. I do want to point out that Dugan is not a railroad retaliation case. It's not under the Department of Labor. It's under the Whistleblower Protection Act. It's under the Office of Special Counsel. So generally the point is that there's different considerations that are usually taken because it's a completely different industry. It's a completely different reviewing agency at the administrative level. Also very importantly in Dugan, the court pointed out that the fact finder should look at any evidence that the agency takes similar action against similarly situated employees who are not whistleblowers. And I think that's, you know, primarily part of our argument here. Again, kind of discussing the difference between the type of administrative review here, one of the questions is strength of motive. And I think in a railroad industry there tends to be a lot more motive than there might be for a government worker to retaliate against a whistleblower. On to another point I want to point out. It deals with the reviewing court and the fact finder. It was Anderson v. City of Bessemer Supreme Court case, says documents or objective evidence that contradict the witness's story or if any testimony is so internally inconsistent or implausible on its face that a reasonable fact finder would not credit, the court of appeals may well find clear error. And one of the things that I want to point out is, again, the discrepancy in the comparators, the discrepancy between Rooker's actual discipline letter, which does not state insubordination, it does not state failure to comply with instructions, and those types of misrepresentations and exaggerations in other cases such as Pan Am have been used to actually support an affirmative defense finding. Thank you. I have one quick question for you. Yes, Your Honor. I think you referred to Mr. Rooker as a whistleblower. Correct. So what did he blow the whistle to? In this case, under the FRSA, one of the protected activities is refusing to or refusing to not do like a safety act, and here he refused to stop conducting the air brake test. So he refused that, but did he communicate to any media or anyone else why he was doing that? Not at the time of the discipline that I'm aware of. Really, it just comes down to that the decision makers were aware of it, and it's that knowledge and what they did with that knowledge that I consider as a whistleblower. At least it's under the same whistleblower statute. I think generally he conducted a protected activity is the point. Okay. Thank you, counsel. Yes, thank you. It's very nicely argued on both sides in this challenging case. I want to thank counsel for appellate and for appellee for your excellent arguments. And this case will now be submitted and the court will recess for the day. All rise.
judges: GRABER, GOULD, PAEZ